25CA1637 Peo in Interest of Harden 10-16-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1637
Mesa County District Court No. 25MH30123
Honorable Gretchen B. Larson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Sara Harden,

Respondent-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 16, 2025

---

Todd M. Starr, County Attorney, Richard B. Tuttle, Assistant County Attorney, Grand Junction, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Sara Harden appeals the district court's order authorizing the involuntary administration of medications under the four-part standard set forth in *People v. Medina*, 705 P.2d 961 (Colo. 1985). She contests the sufficiency of the evidence only as to the second *Medina* element. We conclude that sufficient evidence supports this element. Accordingly, we affirm.

## I.    Background

¶ 2    In July 2025, Harden was placed on an emergency mental health hold after exhibiting symptoms of psychosis following emergency surgery to repair a perforated gastric ulcer brought on by the overuse of nonsteroidal anti-inflammatory drugs (NSAIDs). Doctors believed that her NSAID overuse was due to a psychotic process. She was certified for short-term mental health treatment at HCA HealthONE Mental Health and Wellness Center at the Medical Center of Aurora (the hospital), where she denied taking any NSAIDs and instead claimed her medical event was caused by her "grandfather's plutonium" and a "utensil." Based on these statements and a multi-year history of other psychotic symptoms provided by Harden's family, her treating psychiatrist, Dr. DeLeon,

diagnosed her with schizophrenia or schizophrenia spectrum illness.

¶ 3     After Harden repeatedly declined antipsychotic medications, the hospital sought authorization for their involuntary administration.  Because Harden had no prior history of taking such medications, Dr. DeLeon requested three antipsychotic medications — namely, olanzapine (Zyprexa), aripiprazole (Abilify), and paliperidone (Invega).  Dr. DeLeon also requested three medications to address potential side effects: lorazepam (Ativan), benzatropine (Cogentin), and diphenhydramine (Benadryl).

¶ 4     After a hearing, at which both Dr. DeLeon and Harden testified, the district court entered an order authorizing the requested medications pursuant to *Medina.*

## II.    Legal Principles and Standard of Review

¶ 5     A district court may authorize the involuntary administration of medication if the petitioning party establishes each of the following elements by clear and convincing evidence: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or

to prevent the likelihood of the patient causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Id.* at 973.

¶ 6     We assess whether the evidence, considered as a whole and viewed in the light most favorable to the People, sufficiently supports the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The testimony of the physician seeking to administer treatment may be sufficient, without more, to satisfy the *Medina* test. *Id.* at ¶ 30.

¶ 7     Application of the *Medina* test is a mixed question of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they are supported by the record but review the court's legal conclusions de novo. *Id.* Both the resolution of testimonial conflicts and the determination of witness credibility are solely within the province of the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. Where the evidence supports the district court's findings and conclusions, we may not

substitute our judgment for that of the district court. *People in Interest of A.J.L.*, 243 P.3d 244, 255 (Colo. 2010).

### III. The Second *Medina* Element

¶ 8 Harden does not contest the sufficiency of the evidence supporting the first, third, and fourth *Medina* elements. She challenges only the second, asserting that insufficient evidence supports a conclusion that the treatment is necessary to prevent a significant and likely long-term deterioration in her mental health condition. We disagree.

¶ 9 Dr. DeLeon testified that the requested antipsychotic and side effect medications are necessary to prevent significant and likely long-term deterioration in Harden's mental condition. He explained that, without treatment, Harden's "prognosis would be poor" because "untreated psychosis is not a benign or innocent condition." Rather, untreated psychosis can contribute to neuroexcitotoxicity, "which is the over activity within the brain," leading to treatment resistance in the future "if it's left untreated now."

¶ 10 Dr. DeLeon further noted that, although Harden had never previously been hospitalized for psychiatric issues, this was not due

4

to a lack of symptoms or need for treatment. Instead, Harden's family reported a multi-year history of psychosis and bizarre thought processes, as well as unusual behaviors such as throwing away the family's pots and pans, shooting her brother with a BB gun, and deflating the tires of family members' cars. The family had avoided psychiatric admission and provided for Harden's needs but had "voiced their struggle to do so," indicating "a history that support[ed a] previous need for psychiatric admission."

¶ 11　　Implicitly crediting Dr. DeLeon's testimony, the district court concluded that, without the requested medications, Harden would likely experience significant and long-term deterioration of her mental health condition. The court recognized the chronic nature of Harden's mental health condition and noted that her family has "gone above and beyond to assist her." But, the court concluded, schizophrenia is not something that "goes away if we just turn our back on it and ignore it, and it can continue to get worse and worse." The record supports the court's conclusion.

¶ 12　　We acknowledge Harden's assertion that "Dr. DeLeon's general speculation regarding the prognosis of untreated psychosis is by no means guaranteed to occur," and that her "history, or lack thereof

5

of," would seem to indicate that she is "likely to be an exception." But the record does not support the assertion that Harden lacks a mental health history; instead, it shows that she has a long-standing pattern of untreated psychotic events. Moreover, the second *Medina* element does not speak of certainties; it is framed as a likelihood. And Dr. DeLeon's expert opinion that, without the requested medications, Harden would likely suffer significant and long-term deterioration of her mental health condition is sufficient to support the court's conclusion. *R.K.L.*, ¶ 30.

¶ 13    Accordingly, we conclude that the district court's findings regarding the second *Medina* element are supported by clear and convincing evidence.

## IV.    Disposition

¶ 14    The order is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.